IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 23 - |
| v. | : | DATE FILED: _____ |
| JOSHUA COLEMAN | : | VIOLATIONS: 18 U.S.C. § 1343 (wire fraud – four counts) |
| | : | Notice of forfeiture |

# I N F O R M A T I O N

### COUNTS ONE THROUGH FOUR
(Wire Fraud)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1. Defendant JOSHUA COLEMAN was a resident of North Wales, Pennsylvania, in the Eastern District of Pennsylvania.

2. Defendant JOSHUA COLEMAN owned and operated several companies, including Company #1, Company #2, and Company #3, each of which had its principal place of business in Lower Gwynedd, Pennsylvania, in the Eastern District of Pennsylvania.

3. Lender #1 was a finance company based in New York, New York that provided loans and other financing to private companies.

4. Lender #2 was a finance company based in New York, New York that provided loans and other financing to private companies.

**THE SCHEME TO DEFRAUD**

5.      From in or about August 2020 through in or about June 2022, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JOSHUA COLEMAN**

knowingly devised and intended to devise a scheme and participated in a scheme to defraud Lender #1 and Lender #2, and to obtain money and property of Lender #1 and Lender #2 by materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS**

It was part of the scheme that:

6.      From in or about August 2020 to in or about June 2022, defendant JOSHUA COLEMAN executed a scheme to defraud Lender #1 and Lender #2 by causing the lenders to provide companies owned and controlled by defendant COLEMAN approximately $72 million dollars, based on false representations by defendant COLEMAN that the money would be used to acquire insurance companies, when, in fact, defendant COLEMAN intended to, and did, use a majority of the money for unrelated business debts, personal expenses, and other companies that defendant COLEMAN owned and controlled.

7.      After defendant JOSHUA COLEMAN obtained the money based on his false representations, defendant COLEMAN falsely represented to Lender #1 and Lender #2 that the money was being used for the approved purposes—i.e., insurance company acquisitions—and created numerous false and doctored documents to substantiate his false representations and conceal from Lender #1 and Lender #2 his misappropriation of the money.

*Defendant JOSHUA COLEMAN's Fraud on Lender #1*

8.  On or about May 15, 2020, defendant JOSHUA COLEMAN entered into an agreement with Individuals #1 and #2, who were former investment advisor clients of defendant COLEMAN, and an entity associated with Individuals #1 and #2, pursuant to which defendant COLEMAN acknowledged that he used approximately $20 million belonging to Individuals #1 and #2 and their associated entity without their knowledge or consent and agreed to pay back Individuals #1 and #2 and their associated entity approximately $20 million plus interest.

9.  In or about August 2020, defendant JOSHUA COLEMAN, on behalf of Company #1 and related companies, sought a loan from Lender #1 and falsely represented to Lender #1 that the loan proceeds would be used by Company #1 to acquire insurance companies.

10. On or about September 1, 2020, based on defendant JOSHUA COLEMAN's false representations that the loan proceeds would be used to fund insurance company acquisitions, Lender #1 wired approximately $24.3 million to a bank account of Company #1 controlled by defendant COLEMAN.

11. One day later, on or about September 2, 2020, defendant JOSHUA COLEMAN used approximately $20.2 million of the money provided by Lender #1 to pay the debt that defendant COLEMAN owed to Individuals #1 and #2 and their associated entity, further described in Paragraph 8.

12. From on or about September 1, 2020 to in or about late July 2021, defendant JOSHUA COLEMAN falsely represented to Lender #1 that defendant COLEMAN had not used the money provided by Lender #1 and, in order to substantiate his false representations, provided to Lender #1 doctored bank statements. For example, on or about July

23, 2021, defendant COLEMAN emailed to Lender #1 a bank statement of Company #1 reflecting an account balance of $25,073,917.14, when, in fact, the actual account balance on that date was $0.

13. In or about late July 2021, defendant JOSHUA COLEMAN admitted to Lender #1 that defendant COLEMAN misappropriated a substantial amount of the $24.3 million that Lender #1 provided to Company #1 in September 2020. However, instead of disclosing that he used a large portion of the money to repay Individuals #1 and #2 and their associated entity, defendant COLEMAN falsely told Lender #1 that he used the money to buy an energy company in late September 2020, when, in fact, that transaction took place in late December 2018 ("Energy Company Transaction").

14. To substantiate this false representation, on or about July 28, 2021 and July 30, 2021, defendant JOSHUA COLEMAN emailed to Lender #1 a doctored purchase agreement and bank statement, which purported to show that defendant COLEMAN used approximately $20 million in September 2020 to fund the Energy Company Transaction, when, in fact, the authentic purchase agreement and bank records demonstrate that the Energy Company Transaction took place in December 2018. Based on these false representations, Lender #1 did not declare a default on its loan and instead accepted from defendant COLEMAN a lien on the assets of the energy company, among other items, and agreed to work with the defendant on recouping the balance of the loan.

15. From in or around late July 2021 to in or around June 2022, in order to prevent Lender #1 from declaring a default on the loan, defendant JOSHUA COLEMAN falsely represented to Lender #1 that he and his companies had money to pay back Lender #1. In order to substantiate these false representations, defendant COLEMAN provided to Lender #1

numerous doctored bank records, which reflected that bank accounts controlled by defendant COLEMAN contained millions of dollars more than the accounts truly contained, and other false documents.

*Defendant JOSHUA COLEMAN's Fraud on Lender #2*

16.     In or about September 2021, defendant JOSHUA COLEMAN, on behalf of Company #2, Company #3, and related companies, sought a loan from Lender #2 and falsely represented to Lender #2 that the loan proceeds would be used to acquire insurance companies.

17.     In or around October 2021, Lender #2 discovered that several liens had been placed on the assets of certain companies owned and operated by defendant JOSHUA COLEMAN and required that the liens be terminated by November 2, 2021 in order for the loan agreement to become fully effective.  On or about October 29, 2021 and November 1, 2021, defendant COLEMAN provided to Lender #2 false lien termination documents—i.e., records purporting to be from the Delaware Department of State and Illinois Secretary of State, showing that four of the specified liens had been terminated, when, in fact, those liens were still in effect at that time—in order to cause Lender #2 to enter into the loan agreement.

18.     In or about October 2021, Lender #2 required that certain entities serve as guarantors—i.e., entities that would be responsible for repaying the loan in the event of a default—in order for Lender #2 to enter into the loan agreement.  One such entity was Family Trust #1, which owned approximately four percent of a subsidiary of Company #2.  On or about November 2, 2021, defendant JOSHUA COLEMAN forged the signature of the trustee of Family Trust #1, without the consent or authorization of the trustee, on two documents that were necessary to make Family Trust #1 a guarantor to the loan agreement with Lender #2, and provided those documents to Lender #2.

19. On or about the below dates, Lender #2 wired millions of dollars to a bank account of Company #2 controlled by defendant JOSHUA COLEMAN, based on false representations by defendant COLEMAN that the funds would be used to acquire certain insurance companies:

| Date | Approximate Amount | Purpose of the Loan Disbursement, based on defendant COLEMAN's Representations |
|---|---|---|
| October 22, 2021 | $10,000,000 | Acquisition of Insurance Company #1 |
| November 2, 2021 | $6,600,000 | Acquisition of Insurance Company #2 |
| December 23, 2021 | $8,365,850.67 | Acquisition of Insurance Companies #3, 4, and 5 |
| December 28, 2021 | $11,590,418.59 | Acquisition of Insurance Company #6 |
| February 16, 2022 | $11,108,100.20 | Acquisition of Insurance Company #7 |

20. In order to obtain the approximately $6.6 million from Lender #2 for the acquisition of Insurance Company #2, from at least on or about September 30, 2021 to on or about November 2, 2021, defendant JOSHUA COLEMAN falsely represented to Lender #2 that Company #3 would acquire Insurance Company #2. For example, on or about October 20, 2021, defendant COLEMAN provided to Lender #2 a letter agreement that was purportedly signed by the owners of Insurance Company #2, stating that the buyer of Insurance Company #2 would be Company #3, when, in fact, the authentic letter agreement contained no such provision and, instead, indicated that Insurance Company #2 would be purchased by a different company that was not subject to the terms of the loan agreement with Lender #2.

21. In order to obtain the approximately $8.4 million from Lender #2 for the acquisition of Insurance Companies #3, 4, and 5, from on or about December 19, 2021 to on or about December 23, 2021, defendant JOSHUA COLEMAN provided to Lender #2 asset purchase agreements between Company #3 and Insurance Companies #3, 4, and 5 and other financial information about the transactions, when, in fact, Insurance Companies #3, 4, and 5 never entered into the asset purchase agreements and were never acquired by Company #3.

22. In order to obtain the approximately $11.6 million from Lender #2 for the acquisition of Insurance Company #6, from on or about December 22, 2021 to on or about December 27, 2021, defendant JOSHUA COLEMAN provided to Lender #2 an asset purchase agreement between Company #3 and Insurance Company #6 and other financial information about the transaction, when, in fact, Insurance Company #6 never entered into the asset purchase agreement and was never acquired by Company #3.

23. In order to obtain the approximately $11.1 million from Lender #2 for the acquisition of Insurance Company #7, from on or about February 12, 2022 to on or about February 16, 2022, defendant JOSHUA COLEMAN provided to Lender #2 an asset purchase agreement between Company #3 and Insurance Company #7, which was purportedly signed by the owner of Insurance Company #7, and other financial information about the transaction, when, in fact, Insurance Company #7 never entered into, or signed, the asset purchase agreement and was never acquired by Company #3.

24. In total, defendant JOSHUA COLEMAN caused Lender #2 to wire approximately $47.7 million to a bank account of Company #2, based on defendant COLEMAN's false representations. Approximately $10.9 million was used to fund the acquisition of Insurance Company #1. The remaining $36.8 million was misappropriated by defendant COLEMAN, without the knowledge or consent of Lender #2, and was spent on unrelated business debts (including millions of dollars in payments to Lender #1 and other creditors), personal expenses (including credit card bills, country club membership fees, payments to family members, payments on a $5 million loan to defendant COLEMAN, his spouse, and family trust, property tax payments on a residence in North Wales, Pennsylvania,

and mortgage and tax payments on a vacation/rental property in Ocean City, New Jersey), and payments to other companies owned and operated by defendant COLEMAN.

25. From on or about February 8, 2022 to on or about June 15, 2022, defendant JOSHUA COLEMAN provided to Lender #2 false financial information and doctored bank records in order to prevent Lender #2 from discovering that Company #3 had not acquired Insurance Companies #2, 3, 4, 5, 6, and 7 and that defendant COLEMAN had misappropriated a significant amount of the money that Lender #2 provided. For example, on or about March 2, 2022, in response to a request from Lender #2 for documentation showing that defendant COLEMAN used the loan proceeds to purchase Insurance Companies #3, 4, 5, and 6, defendant COLEMAN emailed to Lender #2 a doctored bank statement that defendant COLEMAN said contained the "acquisition wires" for Insurance Companies #3, 4, 5, and 6. The doctored bank statement showed wires of money to the owners of Insurance Companies #3, 4, 5, and 6, when, in fact, those wires of money never occurred and, as a result, were not reflected in the authentic bank statement.

26. Defendant JOSHUA COLEMAN used, or caused to be used, the wires and facilities of interstate and foreign commerce to advance, further, and carry out this scheme.

## THE WIRES

27. On or about each of the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JOSHUA COLEMAN,**

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate and foreign commerce the signals and sounds described below, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| One | July 28, 2021 | Email from defendant JOSHUA COLEMAN to a representative of Lender #1, attaching a doctored purchase agreement for the Energy Company Transaction, that was initiated in the Eastern District of Pennsylvania and processed through Microsoft servers located outside of Pennsylvania. |
| Two | October 29, 2021 | Email from defendant JOSHUA COLEMAN to a representative of Lender #2, attaching false lien termination forms, that was initiated in the Eastern District of Pennsylvania and processed through Microsoft servers located outside of Pennsylvania. |
| Three | November 23, 2021 | Email from defendant JOSHUA COLEMAN to a representative of Lender #1, attaching a doctored bank record, that was initiated in the Eastern District of Pennsylvania and processed through Microsoft servers located outside of Pennsylvania. |
| Four | February 15, 2022 | Email from defendant JOSHUA COLEMAN to a representative of Lender #2, attaching a fake asset purchase agreement between Company #3 and Insurance Company #7, that was initiated in the Eastern District of Pennsylvania and processed through Microsoft servers located outside of Pennsylvania. |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT**:

1. As a result of the violations of Title 18, United States Code, Section 1343 set forth in this information, defendant

**JOSHUA COLEMAN**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Sections 981(a)(1)(C).

*Christine E. Ayers for*
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

JOSHUA COLEMAN

INFORMATION

Counts
18 U.S.C. § 1343 (wire fraud - four counts)

A true bill.

_____
Foreperson

Filed in open court this _____ day,
Of _____ A.D. 20____

_____
Foreperson

Bail, $_____